UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFF T. O'LOUGHLIN, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| | § | |
| *Plaintiff*, | § | No. _____ |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| ALPINE SITE SERVICES, INC., | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Jeff T. O'Loughlin (referred to as "Plaintiff" or "O'Loughlin") bringing this collective action and lawsuit on behalf of himself and all other similarly situated employees to recover unpaid overtime wages from Defendant Alpine Site Services, Inc. (referred to as "Defendant" or "Alpine"). In support thereof, he would respectfully show the Court as follows:

### I. Nature of Suit

1.      O'Loughlin's claims arise under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA") and under the following state wage and hour laws: (1) the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111.01-4111.99

("OMFWSA"); (2) the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15 ("OPPA"); (3) the New Jersey Wage & Hour Law, N.J. Stat. §§ 34:11-56a-34:11-56a38 ("NJWHL"); (4) the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. §§ 333.101-333.115 ("PMWA") and (5) the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §§ 260.1-260.12 ("PWPCL").

2.     The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers … ."  29 U.S.C. § 202(a).  To achieve its humanitarian goals, the FLSA defines appropriate pay deductions and sets overtime pay, minimum wage, and record keeping requirements for covered employers.  29 U.S.C. §§ 206(a), 207(a), 211(c).

3.     The OMFWSA and the OPPA set minimum wage and recordkeeping requirements for Ohio employers, govern the payment of wages to Ohio employees and limit the deductions from an employee's wages.  *See generally*, Ohio Rev. Code §§ 4111.01-4111.99, 4113.15.

4.     The NJWHL sets minimum wage and recordkeeping requirements for New Jersey employers, governs the payment of wages to New Jersey employees and limits the deductions from an employee's wages.  *See generally*, N.J. Stat. §§ 34:11-56a-34:11-56a38.

5.    The PMWA sets minimum wage and recordkeeping requirements for Pennsylvania employers. *See generally*, 43 Pa. Stat. §§ 333.101-333.115.

6.    The PWPCL governs the payment of wages to Pennsylvania employees and limits the deductions from an employee's wages. *See generally*, 43 Pa. Stat. §§ 260.1-260.12.

7.    Alpine violated the FLSA by employing O'Loughlin and other similarly situated nonexempt employees "for a workweek longer than forty hours [but refusing to compensate them] for [their] employment in excess of [forty] hours … at a rate not less than one and one-half times the regular rate at which [they are or were] employed." 29 U.S.C. § 207(a)(1).

8.    Alpine violated the FLSA by failing to maintain accurate time and pay records for O'Loughlin and other similarly situated nonexempt employees as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.

9.    O'Loughlin brings this collective action under 29 U.S.C. § 216(b) on behalf of himself and all other similarly situated employees (defined below) to recover unpaid overtime wages under the FLSA.

10.    Alpine violated the OMFWSA and the OPPA by employing O'Loughlin and other similarly situated nonexempt employees "at a wage rate of [less than] one and

one-half times [their] wage rate[s] for hours worked in excess of forty hours in one workweek." Ohio Rev. Code § 4111.03(A).

11.    Alpine violated the NJWHL by employing O'Loughlin and other similarly situated nonexempt employees at less than "1 1/2 times [their] regular hourly wage[s] for each hour of working time in excess of 40 hours in any week[.]" N.J. Stat. §§ 34:11-56a4.

12.    Alpine violated the PMWA and the PWPCL by employing O'Loughlin and other similarly situated nonexempt employees at less than "one and one-half times [their] regular rate[s]" for the hours he worked in excess of forty per week. 43 Pa. Stat. § 333.104(c).

13.    O'Loughlin (sometimes referred to as the "Ohio Class Representative" or the "New Jersey Class Representative" or the "Pennsylvania Class Representative") brings this class action under Fed. R. Civ. P. 23 on behalf of himself and all other similarly situated employees (defined below) to recover unpaid overtime compensation and related penalties and damages under the OMFWSA, the OPPA, the NJWHL, the PMWA and the PWPCL.

## II.  Jurisdiction & Venue

14.    The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because it arises under the FLSA, a federal statute.

15.     The Court has supplemental jurisdiction over O'Loughlin's OMFWSA, OPPA, NJWHL, PMWA and PWPCL claims pursuant to 28 U.S.C. § 1367(a) because they so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because Alpine resides in the Houston Division of the Southern District of Texas.

### III.  Parties

17.     Jeff T. O'Loughlin is an individual who resides in Littleton, Colorado and who was employed by Alpine during the last three years.

18.     Alpine Site Services, Inc. is a Colorado corporation that may be served with process by serving its registered agent:

> National Registered Agents, Inc.
> 1999 Bryan Street, Suite 900
> Dallas, Texas 75201

Alternatively, if the registered agent of Alpine Site Services, Inc. cannot with reasonable diligence be found at the company's registered office, Alpine Site Services, Inc. may be served with process by serving the Texas Secretary of State pursuant to Tex. Bus. Org. Code § 5.251 and Tex. Civ. Prac. & Rem. Code § 17.026.

19.     Whenever it is alleged that Alpine committed any act or omission, it is meant that the company's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Alpine or was done in the routine and normal course and scope of employment of Alpine's officers, directors, vice-principals, agents, servants or employees.

## IV.  Facts

20.     According to its website, Alpine tests and installs engineered screwpiles for commercial construction projects, including power stations, oil and gas refineries and natural gas plants.    *See generally*, Alpine Site Services—About Alpine, http://alpinesites.com/alpine-site-services (last visited Apr. 27, 2018).

21.     Alpine does business in the territorial jurisdiction of this Court.

22.     Alpine employed O'Loughlin as a laborer, machine operator and welder during the last three years.

23.     During O'Loughlin's employment with Alpine, he worked in Texas, Louisiana, Ohio, New Jersey and Pennsylvania.

24.     During O'Loughlin's employment with Alpine, he was engaged in commerce or in the production of goods for commerce.

25.    During O'Loughlin's employment with Alpine, the company was an enterprise engaged in commerce because it (1) had employees engaged in commerce or in the production of goods for commerce or had employees handling, selling or otherwise working on goods or materials that had been moved in or produced for commerce by others and (2) had an annual gross volume of sales made or business done of at least $500,000.

26.    Alpine paid O'Loughlin on an hourly basis.

27.    During O'Loughlin's employment with Alpine, he regularly worked in excess of forty hours per week.

28.    Alpine, though, did not pay O'Loughlin for all of the hours that he worked, and it did not count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

29.    Alpine knew or reasonably should have known that O'Loughlin worked in excess of forty hours per week.

30.    Alpine did not pay O'Loughlin overtime as required by 29 U.S.C. § 207(a)(1) (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL) for the hours he worked in excess of forty per week.

31.    Instead, Alpine failed to pay for all of the hours that O'Loughlin worked and to count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

32.    In other words, Alpine paid O'Loughlin for fewer hours—both regular hours and overtime hours—than he actually worked.

33.    Additionally, when it did pay overtime, Alpine paid O'Loughlin at his normal hourly rate (i.e., his straight-time rate).

34.    Alpine knew or reasonably should have known that O'Loughlin was not exempt from the overtime requirements of the FLSA (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL).

35.    Alpine failed to maintain accurate time and pay records for O'Loughlin and other similarly situated nonexempt employees as required by 29 U.S.C. § 211(c) (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL).

36.    Alpine knew or showed a reckless disregard for whether its pay practices violated the FLSA (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL).

37.    Alpine is liable to O'Loughlin for his unpaid overtime wages, related damages and penalties, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b)

(and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL).

38.    All laborers, machine operators and welders employed by Alpine are similarly situated to Plaintiff because they (1) have similar job duties; (2) regularly work in excess of forty hours per week; (3) are not paid overtime for the hours they worked in excess of forty per week as required by 29 U.S.C. § 207(a)(1) (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL) and (4) are entitled to recover their unpaid overtime wages, related damages and penalties, and attorneys' fees and costs from Alpine pursuant to 29 U.S.C. § 216(b) (and, when applicable, the OMFWSA, the OPPA, the NJWHL, the PMWA and/or PWPCL).

### V.  Count One— Failure To Pay Overtime in Violation of 29 U.S.C. § 207(a)

39.    O'Loughlin adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

40.    During O'Loughlin's employment with Alpine, he was a nonexempt employee.

41.    As a nonexempt employee, Alpine was legally obligated to pay O'Loughlin "at a rate not less than one and one-half times the regular rate[s] at which he [was]

- 9 -

employed[]" for the hours that he worked over forty in a workweek.  29 U.S.C. § 207(a)(1).

42.    Alpine failed to pay O'Loughlin for the hours he worked over forty in a workweek at one and one-half times his regular rates.

43.    Instead, Alpine failed to pay for all of the hours that O'Loughlin worked and to count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

44.    In other words, Alpine paid O'Loughlin for fewer hours—both regular hours and overtime hours—than he actually worked.

45.    Additionally, when it did pay overtime, Alpine paid O'Loughlin at his normal hourly rate (i.e., his straight-time rate).

46.    If Alpine classified O'Loughlin as exempt from the overtime requirements of the FLSA, he was misclassified because no exemption excuses the company's noncompliance with the overtime requirements of the FLSA.

47.    Alpine knew or showed a reckless disregard for whether its pay practices violated the overtime requirements of the FLSA; in other words, Alpine willfully violated the overtime requirements of the FLSA.

## VI.  Count Two—
## Failure To Maintain Accurate Records
## in Violation of 29 U.S.C. § 211(c)

48.    O'Loughlin adopts by reference all of the facts set forth above.  *See*, Fed. R. Civ. P. 10(c).

49.    The FLSA requires employers to keep accurate records of hours worked by and wages paid to nonexempt employees.  29 U.S.C. § 211(c); 29 C.F.R. pt. 516.

50.    In addition to the pay violations of the FLSA described above, Alpine also failed to keep proper time and pay records as required by the FLSA.

## VII.  Count Three—
## Collective Action Allegations Under 29 U.S.C. § 216(b)
## for Violations of the FLSA

51.    O'Loughlin adopts by reference all of the facts set forth above.  *See*, Fed. R. Civ. P. 10(c).

52.    On information and belief, other employees have been victimized by Alpine's violations of the FLSA identified above.

53.    These employees are similarly situated to O'Loughlin because, during the relevant time period, they held similar positions, were compensated in a similar manner and were denied overtime wages at one and one-half times their regular rates for hours worked over forty in a workweek.

54.     Alpine's policy or practice of failing to pay overtime compensation is a generally applicable policy or practice and does not depend on the personal circumstances of the putative class members.

55.     Since, on information and belief, O'Loughlin's experiences are typical of the experiences of the putative class members, collective action treatment is appropriate.

56.     All employees of Alpine, regardless of their rates of pay, who were paid at a rate less than one and one-half times the regular rates at which they were employed for the hours that they worked over forty in a workweek are similarly situated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.  The Class is therefore properly defined as:

> All laborers, machine operators and welders employed by
> Alpine during the last three years.

57.     Alpine is liable to O'Loughlin and the other laborers, machine operators and welders for the difference between what it actually paid them and what it was legally obligated to pay them.

58.     Because Alpine knew and/or showed a reckless disregard for whether its pay practices violated the FLSA, the company owes O'Loughlin and the other laborers, machine operators and welders their unpaid overtime wages for at least the last three years.

59.    Alpine is liable to O'Loughlin and the other laborers, machine operators and welders in an amount equal to their unpaid overtime wages as liquidated damages.

60.    Alpine is liable to O'Loughlin and the other laborers, machine operators and welders for their reasonable attorneys' fees and costs.

61.    O'Loughlin has retained counsel who are well versed in FLSA collective action litigation and who are prepared to litigate this matter vigorously on behalf of them and all other putative class members.

### VIII.  Count Four—
### Failure to Pay Overtime
### in Violation of the OMFWSA and the OPPA

62.    O'Loughlin adopts by reference all of the facts set forth above.  *See*, Fed. R. Civ. P. 10(c).

63.    During O'Loughlin's employment with Alpine, he performed at least some work for the company in the State of Ohio.

64.    During O'Loughlin's employment with Alpine, he was a nonexempt employee.

65.    As a nonexempt employee, Alpine was legally obligated to pay O'Loughlin "at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek."  Ohio Rev. Code § 4111.03(A).

66.     Alpine failed to pay O'Loughlin for the hours he worked over forty in a workweek at one and one-half times his wage rate.

67.     Instead, Alpine failed to pay for all of the hours that O'Loughlin worked and to count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

68.     In other words, Alpine paid O'Loughlin for fewer hours—both regular hours and overtime hours—than he actually worked.

69.     Additionally, when it did pay overtime, Alpine paid O'Loughlin at his normal hourly rate (i.e., his straight-time rate).

70.     If Alpine classified O'Loughlin as exempt from the overtime requirements of the OMFWSA, he was misclassified because no exemption excuses the company's noncompliance with the overtime requirements of the OMFWSA.

71.     Alpine knew or showed a reckless disregard for whether its pay practices violated the overtime requirements of the OMFWSA and the OPPA; in other words, Alpine willfully violated the overtime requirements of the OMFWSA and the OPPA.

### IX.  Count Five—
### Failure to Pay Overtime
### in Violation of the NJWHL

72.     O'Loughlin adopts by reference all of the facts set forth above.  *See*, Fed. R. Civ. P. 10(c).

73.    During O'Loughlin's employment with Alpine, he performed at least some work for the company in the State of New Jersey.

74.    During O'Loughlin's employment with Alpine, he was a nonexempt employee.

75.    As a nonexempt employee, Alpine was legally obligated to pay O'Loughlin at "1 1/2 times [his] regular hourly wage for each hour of working time in excess of 40 hours in any week[.]"  N.J. Stat. §§ 34:11-56a4.

76.    Alpine failed to pay O'Loughlin for the hours he worked over forty in a workweek at one and one-half times his regular hourly wage.

77.    Instead, Alpine failed to pay for all of the hours that O'Loughlin worked and to count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

78.    In other words, Alpine paid O'Loughlin for fewer hours—both regular hours and overtime hours—than he actually worked.

79.    Additionally, when it did pay overtime, Alpine paid O'Loughlin at his normal hourly rate (i.e., his straight-time rate).

80.    If Alpine classified O'Loughlin as exempt from the overtime requirements of the NJWHL, he was misclassified because no exemption excuses the company's noncompliance with the overtime requirements of the NJWHL.

81.     Alpine knew or showed a reckless disregard for whether its pay practices violated the overtime requirements of the NJWHL; in other words, Alpine willfully violated the overtime requirements of the NJWHL.

### X.  Count Six—
### Failure to Pay Overtime
### in Violation of the PMWA and the PWPCL

82.     O'Loughlin adopts by reference all of the facts set forth above.  *See*, Fed. R. Civ. P. 10(c).

83.     During O'Loughlin's employment with Alpine, he performed at least some work for the company in the State of Pennsylvania.

84.     During O'Loughlin's employment with Alpine, he was a nonexempt employee.

85.     As a nonexempt employee, Alpine was legally obligated to pay O'Loughlin at "one and one-half times [his] regular rate" for the hours he worked in excess of forty per week.  43 Pa. Stat. § 333.104(c).

86.     Alpine failed to pay O'Loughlin for the hours he worked over forty in a workweek at one and one-half times his regular rate.

87.     Instead, Alpine failed to pay for all of the hours that O'Loughlin worked and to count all of the hours that O'Loughlin worked towards its obligation to pay overtime.

88.     In other words, Alpine paid O'Loughlin for fewer hours—both regular hours and overtime hours—than he actually worked.

89.     Additionally, when it did pay overtime, Alpine paid O'Loughlin at his normal hourly rate (i.e., his straight-time rate).

90.     If Alpine classified O'Loughlin as exempt from the overtime requirements of the PMWA, he was misclassified because no exemption excuses the company's noncompliance with the overtime requirements of the PMWA.

91.     Alpine knew or showed a reckless disregard for whether its pay practices violated the overtime requirements of the PMWA and the PWPCL; in other words, Alpine willfully violated the overtime requirements of the PMWA and the PWPCL.

**XI.  Count Seven—**
**Class Action Allegations Under Fed. R. Civ. P. 23**
**for Violations of the OMFWSA, the OPPA, the NJWHL,**
**the PMWA and the PWPCL**

92.     O'Loughlin adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

93.     O'Loughlin, the Ohio Class Representative, brings Count Four against Alpine under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All laborers, machine operators and welders employed by Alpine in the State of Ohio during the last three years (referred to as the "Ohio Class").

94.     O'Loughlin, the New Jersey Class Representative, brings Count Five against Alpine under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All laborers, machine operators and welders employed by Alpine in the State of New Jersey during the last three years (referred to as the "New Jersey Class").

95.     O'Loughlin, the Pennsylvania Class Representative, brings Count Six against Alpine under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All laborers, machine operators and welders employed by Alpine in the State of Pennsylvania during the last three years (referred to as the "Pennsylvania Class").

96.     The claims of the Ohio Class, the New Jersey Class and the Pennsylvania Class, if certified for class-wide treatment, will be pursued by all similarly situated persons who do not affirmatively opt-out of the classes.

97.     The members of the Ohio Class, the New Jersey Class and the Pennsylvania Class are so numerous that joinder of all members is impracticable; the exact number of putative class members is unknown at the present time but should be over one hundred.

98.     There are numerous questions of law and fact common to the Ohio Class, the New Jersey Class and the Pennsylvania Class, including (1) whether Alpine's policies and practices described in this complaint are unlawful; (2) whether members of the Ohio Class, the New Jersey Class and the Pennsylvania Class are paid for all of the

time they work; (3) whether Alpine misclassified members of the Ohio Class, the New Jersey Class and the Pennsylvania Class as exempt employees; (4) whether Alpine maintains accurate time and pay records for members of the Ohio Class, the New Jersey Class and the Pennsylvania Class; (5) whether Alpine failed to pay overtime premiums to members of the Ohio Class, the New Jersey Class and the Pennsylvania Class and (6) whether Alpine willfully violated the law.

99.     O'Loughlin's claims are typical of the claims of the Ohio Class, the New Jersey Class and the Pennsylvania Class.  Alpine paid O'Loughlin and the Ohio Class, the New Jersey Class and the Pennsylvania Class using the same unlawful practice(s).  In other words, O'Loughlin's claims and the claims of the Ohio Class, the New Jersey Class and the Pennsylvania Class arise out of a common course of conduct of Alpine and are based on the same legal and remedial theories.

100.    O'Loughlin will fairly and adequately protect the interests of the Ohio Class, the New Jersey Class and the Pennsylvania Class and has retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex employment litigation (including class actions, collective actions, and multidistrict litigation).  O'Loughlin and his counsel are committed to prosecuting this action vigorously on behalf of the Ohio Class, the New Jersey Class and the Pennsylvania Class and have the financial resources to do so.  Neither the O'Loughlin

nor his counsel have interests that are contrary to or that conflict with those of the proposed class.

101.    Class certification of the Ohio Class, the New Jersey Class and the Pennsylvania Class is appropriate under Fed. R. Civ. P. 23 because questions of law and fact common to the putative class members predominate over any questions affecting only individual members of the class. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Moreover, there are no unusual difficulties likely to be encountered in the management of this case as a class action.

102.    The class action mechanism is superior to any alternatives that may exist for the fair and efficient adjudication of these claims. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which the Ohio Class, the New Jersey Class and the Pennsylvania Class can effectively litigate against a large, well-represented corporate defendant like Alpine. In the absence of a class action, Alpine would be unjustly enriched because the company would be able to retain the benefits

and fruits of the numerous violations of federal and state law. Numerous individual actions would also place an enormous burden on the courts as they will be forced to take duplicative evidence and decide the same issues relating to Alpine's conduct over and over again.

103.    Alpine has acted or refused to act on grounds generally applicable to the Ohio Class, the New Jersey Class and the Pennsylvania Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to each class as a whole. Prosecution of separate actions by members of the Ohio Class, the New Jersey Class and the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Ohio Class that would establish incompatible standards of conduct for Alpine.

## XII.  Jury Demand

104.    O'Loughlin demands a trial by jury.

## XIII.  Prayer

105.    O'Loughlin on behalf of himself and other similarly situated employees under 29 U.S.C. § 216(b) and the Ohio Class, the New Jersey Class and the Pennsylvania Class under Fed. R. Civ. P. 23, prays for the following relief:

   a.  an order allowing this action to proceed as a collective action under 29 U.S.C § 216(b);

   b.  an order certifying the Ohio Class under Fed. R. Civ. P. 23 and appointing O'Loughlin as representative of the Ohio Class;

c.  an order certifying the New Jersey Class under Fed. R. Civ. P. 23 and appointing O'Loughlin as representative of the New Jersey Class;

d.  an order certifying the Pennsylvania Class under Fed. R. Civ. P. 23 and appointing O'Loughlin as representative of the Pennsylvania Class;

e.  a service award for any class representative(s);

f.  an order appointing MOORE & ASSOCIATES as class counsel;

g.  a declaration that Alpine is financially responsible for notifying all members of the Ohio Class, the New Jersey Class and the Pennsylvania Class of its alleged violation of wage and hour laws;

h.  a declaration that Alpine violated the OMFWSA, the OPPA, the NJWHL, the PMWA and the PWPCL;

i.  injunctive relief;

j.  judgment awarding O'Loughlin and the other laborers, machine operators and welders all unpaid overtime compensation, related damages and penalties, attorneys' fees and costs;

k.  prejudgment interest at the applicable rate, if available;

l.  postjudgment interest at the applicable rate, if available;

m. all such other and further relief to which O'Loughlin and the other laborers, machine operators and welders may show themselves to be justly entitled.

Respectfully Submitted,

MOORE & ASSOCIATES

By: _____

Melissa Moore
State Bar No. 24013189
Federal Id. No. 25122
Curt Hesse
State Bar No. 24065414
Federal Id. No. 968465
Lyric Centre
440 Louisiana Street, Suite 675
Houston, Texas  77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFF
JEFF T. O'LOUGHLIN**

Of Counsel:

Bridget Davidson
State Bar No. 24096858
Federal Id. No. 3005005
Moore & Associates
440 Louisiana Street, Suite 675
Houston, Texas  77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739